IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CLIFF R. PORTER,

    Plaintiff,

vs.

Case No. C2-06-1055
Judge Edmund A. Sargus, Jr.
Magistrate Judge Mark R. Abel

CITY OF COLUMBUS,
    et al.,

    Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' Motion for Summary Judgment. For the reasons that follow, Defendants' Motion is **GRANTED**.

**I.**

Exploring is a career-education program operated and maintained by Learning for Life, a non-profit subsidiary of the Boy Scouts of America. Local community organizations initiate a specific Explorer post by matching people and program resources to the interests of the youth in the community. The Columbus Division of Police is a sponsoring organization for the law-enforcement career-education program at Explorer Post #221. Employees of the Columbus Division of Police volunteer as advisor-leaders at Explorer Post #221. Either the Boy Scouts or the sponsoring organization determine who may serve as the adult volunteer and may remove such person from the program at any time with or without cause. (Green Aff., ¶ 4.)[1]

---

[1]     Mr. Green is employed as the Scout Executive for the Boy Scouts of America, Simon Kenton Council. In that position, Mr. Green is responsible for the selection, approval and maintenance

As a young man, Plaintiff, Cliff R. Porter, had an interest in law enforcement, and became a member of the Columbus Division of Police Explorers in 1999. In 2003, after he turned the age of 21, Plaintiff remained a volunteer with Explorer Post #221 and was appointed Associate Advisor by Mark E. Frontera.[2] In 2000 or 2001, Plaintiff applied to the Columbus Division of Police as a Communication Radio Technician. Plaintiff was interviewed by three panel members on September 18, 2001. Plaintiff was later notified that he had not been hired for the position.

In 2003, Plaintiff filed an application for employment as a police officer. He completed a personal history questionnaire, and returned it to the Background Investigation Unit. According to Plaintiff, the Columbus Division of Police would have received his application some time after February 27, 2004.[3] (Porter Aff., ¶ 2.) On the questionnaire, Plaintiff disclosed that he had used marijuana 100 to 200 times, LSD once, cocaine once, and a prescription drug not prescribed to him as late as June of 1998.[4] Plaintiff successfully completed the examination portion of

---

of standards for all adult volunteer leaders and for enforcing the policies of Boy Scouts of America. (Green Aff., ¶ 1.)

[2] A companion case, *Frontera v. City of Columbus*, Case No. C2:06-cv-1046, is currently pending before this Court. The Court has consolidated the two cases for pretrial purposes. The Court addresses Defendants' Motion for Summary Judgment in Mr. Frontera's case by separate Opinion and Order.

[3] The dates in the record are unclear, but Defendants' records indicate that they received Plaintiff's personal history questionnaire no later than March 12, 2004. (Gramlich Aff., at ¶ 5.)

[4] Plaintiff avers in his affidavit that his admitted drug use occurred more than five years before his application as a Communications Radio Technician, in June 1998 when he was 16 years old. Plaintiff states in his affidavit that Civil Service standards provide that an applicant will be removed from the eligibility list if he or she used or purchased illegal drugs within three (3) years of application. (In his affidavit, Plaintiff recites a purported "background standard," related to substance abuse, but does not reference a policy, administrative code or statute from which it allegedly derives.) Because the drug use occurred more than five years before his application, according to Plaintiff, he believes that his drug use should not have made him ineligible for service and than he should not have been removed from the eligibility list. (Pl's Aff., ¶¶ at 2-4.)

application process, and was placed in the "70 band," that is, the group of applicants who passed but scored lowest on the examination. As to the 70 band, the Division of Police may select a person from the list, as needed, but is not required to make any hires.

Lt. William M. Gramlich, the lieutenant in charge of the Division's Personnel Administration Section, which includes the department that conducts background investigations of eligible-police officer applicants, reviewed Plaintiff's questionnaire in March 2004. Lt. Gramlich determined that, because of Plaintiff's drug use and because he was in the 70 band, Plaintiff's application would not be processed further in deference to other qualified individuals on the eligibility list. Plaintiff did not receive notification that he had been removed from the eligibility list.[5]

Plaintiff alleges that, during the time he was applying, testing and interviewing for a position as a police officer with the City of Columbus, and, in particular during December of 2004, he was active as an Associate Advisor the Explorer Post. During this time, the police Internal Affairs Bureau Lieutenant Robert Meader assigned Sergeants Rapp and Bachman to conduct an internal investigation regarding concerns raised about Officer Mark Frontera's conduct in his role as an Explorer Post Advisor. As part of their investigation, Rapp and Bachman

---

[5] Plaintiff contends that he remained on the eligibility list after March 2004 based on a response to a public records request. As revealed in a September 5, 2008 response to a public records request to provide a "[c]opy of all letters and notifications sent to Cliff Porter on or after March 2004 notifying of his removal from the Police Officer eligibility list," to which the representative from the Civil Service Commission replied that "[n]o letters or notifications were sent to Cliff Porter on or after March 2004 notifying him of his removal from the Police officer eligibility list." (Pl's Aff., Exh. A.) Putting aside the procedural irregularities and admissibility issues under Rule 56, this statement does not demonstrate, as Plaintiff suggests, that he was never removed and remained eligible in March 2004. It simply demonstrates that the Division never sent him a letter. In any event, Gramlich did not state that Plaintiff's name was "removed" from the list; he testified that he made the decision not to process the application further. The list expired with Plaintiff's name still on it.

interviewed Plaintiff.

On December 14, 2004, Lt. Meader ordered that no youth participant or adult leader would have any contact with Post Advisor Mark Frontera. Meader also said that if anyone attempted to have contact with Frontera, the information would be given to the Columbus Police Division Internal Background Investigations Unit and, if that person applied for a job with the Division of Police, he or she would not be hired for failure to cooperate with the order.

On December 17, 2004, Sergeants Mark Rapp and Joseph Bachman interviewed Plaintiff and told him that he was required to cooperate in an internal investigation of Frontera, or, if not, he would be considered insubordinate and would be removed from his position with the Explorers. Plaintiff responded that he had a personal friendship with Frontera. Rapp and Bachman stated in the December 17, 2004 interview that they were giving Plaintiff direct orders not to contact any present or former members of the Explorer Post and specifically ordered Plaintiff not to have any contact with Frontera. Sgts. Rapp and Bachman never conveyed any of this information to the Division of Personnel Bureau or Gramlich who, nine months earlier, had processed Plaintiff's application for a police officer.[6]

Plaintiff asserts that, despite the fact that the Explorer Posts are separate non-profit organizations outside of the control or chain of command of the Columbus Police Department, Lt. Robert Meader terminated Plaintiff's participation in the program. Lt. Meader gave Plaintiff a letter on February 7, 2005 that stated his participation in the Explorer Post was terminated and that

---

[6] Lt. Meader also testified that he did not relay any information to the Personnel Bureau. (Meader Dep., at pp. 47-49.) Gramlich did not learn of Plaintiff's involvement in the Internal Affairs investigation of Officer Frontera until some time in December 2004 or January 2005– some nine months after he made the determination not to process Plaintiff's application in March of 2004. (Gramlich Aff., ¶ 7.)

-4-

he was to return a list of items, such as his Explorer's uniform. (Meader Dep. Ex. B.2.) Lt. Meader also stated in the letter that, "[t]his letter is also to serve as notice that you are not to trespass on City of Columbus and/or Division of Police property due to your expulsion as a Columbus Police Explorer. Because you have been removed as a Columbus Police Explorer any unwanted phone calls to active Columbus Police Explorers may have criminal culpability which could result in charges being filed against you." (*Id.*) Although Lt. Meader advised him not to trespass on City of Columbus and/or Division of Police property due to being expelled as a Columbus Police Explorer, Plaintiff testified that he did not believe the order had an effect on him, and he ignored it. (Pl's Dep., at pp. 53-57.)

Lt. Meader testified in his deposition that his position as a lieutenant assigned to the training bureau within the Columbus Division of Police gave him authority to issue the orders to Plaintiff. (*Id.* p.81.) Meader could not identify any department directive or standard operating procedure that provided him with the authority to remove Plaintiff from the Explorer Program.

Plaintiff filed a complaint with this Court on December 15, 2006. He generally alleges that he was removed arbitrarily and without authority from his position as an Associate Advisor with the Explorers, and that his application as a police officer was jeopardized after he participated in the investigation of Frontera.

Following the Court's Order granting in part and denying in part Defendants' motion for judgment on the pleadings, Plaintiff's remaining claims arise under 42 U.S.C. § 1983 against the City of Columbus and City of Columbus employees Robert Meader, Joseph Bachman, Mark Rapp, Walter Distelzweig, Brook Wilson, and Kimberly Wilkinson in their official capacities for alleged violations of his constitutional rights to freedom of speech, freedom of association, and substantive

and procedural due process.

## II.

The procedure for considering whether summary judgment is appropriate is set forth in Federal Rule of Civil Procedure 56(c), which provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Summary judgment is proper if no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 617 (6th Cir.2001). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir.2000). A scintilla of evidence in support of the plaintiff's position will be insufficient; rather, evidence must exist on which the jury can reasonably find in favor of the plaintiff. *Anderson v. Liberty Lobby*, 477 U.S. at 252; *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir.2000). The Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products*, 530

U.S. 133 (2000).

### III.

**A. Section 1983 Claim Against the City of Columbus and City Officials**

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

42 U.S.C. § 1983. Section 1983 itself creates no substantive rights, but merely provides a mechanism for aggrieved persons to obtain a remedy for deprivations of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992).

Defendant, the City of Columbus, as a municipality, and its officials, may be held liable under § 1983 only when the municipality itself causes the alleged constitutional violation. *Monell*, 436 U.S. at 694. The doctrine of *respondeat superior* does not apply; a governmental entity cannot be held liable under § 1983 based solely upon allegations that an employee or agent inflicted an injury. *Id.* at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. The Sixth Circuit has held that "to satisfy the *Monell* requirements a plaintiff must identify the policy, connect the policy to the city itself and show that particular injury incurred

because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (adopting the test articulated in *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984)).

The City of Columbus, therefore, cannot be held liable unless Plaintiff can prove that he suffered a constitutional deprivation and that such deprivation was caused by a policy, practice or custom of the City. The local government's policy or custom "must be the moving force of the constitutional violation in order to establish the liability of a governmental body under § 1983." *Polk County v. Dodson*, 454 U.S. 312 (1981) (quoting *Monell*, 436 U.S. at 694). The course of conduct, "whether formally declared or informally accepted, must be the policy of the city government if it is to be the basis of city liability." *Bennett*, 728 F.2d at 767.

The City of Columbus seeks summary judgment on the basis that Plaintiff has failed to establish a violation of his constitutional rights. In particular, Defendants assert that Plaintiff's § 1983 claim fails as a matter of law because Plaintiff has not endured a constitutional deprivation and, even assuming a constitutional violation, he has not identified any City policy, custom or practice that could have caused it. Plaintiff counters that Meader's order prohibiting him from participating in the Explorer program and from trespassing on City property violated his rights under the First Amendment. He also maintains that Defendants' failure and indifference to clarify the nexus between the Explorer Posts and the Police Division deprived him of due process. Plaintiff also contends that he is under no duty to identify a specific written policy but that, in this case, Defendants' informal policies and practices deprived him of his constitutional rights under the First and Fourteenth Amendments.

### A. Alleged Constitutional Violations[7]

#### 1. First Amendment

Plaintiff makes the following argument in support of his claim that Defendants violated his rights:

> Plaintiff was primarily a private citizen when he served as Associate Advisor. CPD [Columbus Division of Police] policy, custom or practices that allowed inappropriate exercise of control by CPD over the Explorer Posts deprived Plaintiff of his rights. *Meader's order given on February 7, 2005 to Plaintiff violated his First Amendment rights because the order was over[-]broad because it prohibited both protected and unprotected speech/activity.* U.S. Const. amend. I. The limitations should also be clear and understandable, but *the order is void for vagueness. . . .* Meader had a duty to narrowly draw his order so Plaintiff was not barred from engaging in protected activity.[8]
>
> Defendants' policy, custom or practice of having an undefined nexus between CPD and the Explorer Posts allowed Meader to inappropriately exercise control over Plaintiff in his personal activities and limit his protected activity. *The U.S. Constitution gives Plaintiff the right as a private citizen the freedom to associate with other individuals of his choosing. Meader's order violated Plaintiff's first amendment rights attempting to stop him from associating with others with whom he had the right to associate – Explorer Post members and advisors.* Again, this violation is a result of Defendants' policy, custom or practice of having an undefined nexus between CPD and the Explorer Posts.

(Pl's Mem. Opp., at pp. 6-7 (emphasis added).)

---

[7] Besides referencing *Monell* and *Kentucky v. Graham*, 473 U.S. 1590 (1985) in his introductory statement of the law regarding municipality liability, Plaintiff does not cite to a single case or other piece of authority in his entire memorandum to support his claims under § 1983 that Defendants violated his rights under the First and Fourteenth Amendments. Given the dearth of authority Plaintiff has provided, the Court could consider his claims abandoned. Nonetheless, the Court endeavors to address the merits of Plaintiff's claims.

[8] Plaintiff contends that he had a right to enter upon public property, and that Meader's order forbade him from doing so. The Court notes that Meader's order prohibited Plaintiff from "trespassing" on City property. The Court cannot interpret Meader's directive that Plaintiff not "trespass" as precluding him, as he suggests, from ever stepping foot on public property. Trespassing, by definition, prohibits entering into private premises or areas without permission. One cannot trespass onto property which is open generally to the public. Meader's order prohibited Plaintiff from proceeding on to City property which was not generally open to the public.

The Court concludes that Plaintiff has not established a constitutional violation. Even if he had, Plaintiff has not established that a policy or custom of the City, connect that policy to the City itself or show that the policy caused his injury.

As the Court understands Plaintiff's position, Porter contends that Defendants violated his First Amendment rights because Lt. Meader's February 7, 2005 order was overly-broad, and prohibited him from associating as a private citizen with members and advisors of the Explorer Post. While the First Amendment does not expressly protect a "right of association," Supreme Court precedent has made clear two aspects of protected activity:

> In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment–speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.

*Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984).

The first of these two expressions, the "freedom of intimate association," extends to various aspects of individual liberty guaranteed by the Bill of Rights. This branch of the freedom of association affords protections to the most personal of associations, such as marriage and preserves "certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." *Id.* at 618. Plaintiff has not cited any cases, and indeed the Court cannot find a cognizable basis from which to determine that his association with the Explorer Post was the sort of "intimate human relationships" referred to in *Roberts* that the

Constitution was designed to protect.

Similarly, Plaintiff cites to no legal authorities which have found a constitutional right of association as it relates to continued participation as a civilian in the Columbus Police Department's volunteer-based Explorer program, or to associate on a social level with the members and advisors of the Post, when such organization has expelled him from participation. Moreover, Plaintiff has not cited to any cases in the absence of a protected class or activity in which a volunteer, non-profit organization must associate with a person the organization has elected to exclude. While the Boy Scouts and the Division, as the host organization no doubt could permissibly expel Plaintiff from its volunteer-based program because "[t]he forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints," *Boy Scouts of America v. Dale*, 530 U.S. 640, 648 (2000), Plaintiff has failed to point to authority for the proposition that he has an absolute right to continued association with the group. Moreover, the Constitution does not recognizes a generalized right of "social association." *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).[9]

Finally, Plaintiff's First Amendment claim fails as a matter of law to the extent he bases his claim solely on the actions of Lt. Meader. The doctrine of *respondeat superior* does not apply in § 1983 cases. The City of Columbus cannot be held liable under § 1983 based solely upon allegations that its employee, in this case, Lt. Meader, inflicted an injury. *Monell*, 436 U.S. at

---

[9] In any event, Plaintiff testified that he ignored the Lt. Meader's order and continued to associate with whom he pleased.

691.[10]

## 2. Fourteenth Amendment

The Court likewise cannot find that Defendants violated Plaintiff's rights under the Fourteenth Amendment. Plaintiff asserts that "Defendants' failure and indifference to clarify the nexus between the Explorer Posts and CPD deprived Plaintiff of due process. The appropriate procedure for removing Plaintiff as Associate Advisor would have been for a concerned person to contact the Post Advisor or Learning for Life." (Pl's Mem. Opp., at p. 7.) Plaintiff does not contend that he could not be removed as Associate Advisor; he maintains instead that the Columbus Division of Police no authority to remove him as Associate Post Advisor. Plaintiff is factually mistaken. The undisputed evidence of record demonstrates that either Learning for Life or the Division, as the host organization, could remove him. (Green Aff., ¶ 4.) The Court can glean no constitutional deprivation under the Fourteenth Amendment given the record in this case.

Plaintiff also suggests that the Defendants violated his Fourteenth Amendment rights in the handling of his citizen complaint. He asserts that the Columbus Police Department had a policy, custom or practice that allows IAB investigators to ignore conflict of interest-issues when handling citizen complaints, which deprived him of due process.[11]

---

[10] This case does not, as in *Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537 (1987), present a question involving access to public accommodations. *Rotary Club* stands for the proposition that civil rights statutes that seek to eradicate invidious discrimination by private clubs in their membership do not unduly infringe club members' associational rights in view of the compelling state interest in eliminating discrimination against members of a protected class and in assuring them equal access to public accommodations. Plaintiff herein makes no such claim.

[11] In his Complaint, Plaintiff alleges that he had a constitutional property right to apply for and accept the position of police officer, and that the actions of Meader, Rapp and Bachman unconstitutionally deprived him of his right to participate in the selection process for police officer. (Compl., ¶¶ 78-79.) First, Plaintiff does not mention this argument in response to Defendants' Motion

-12-

Plaintiff filed a citizen's complaint against Meader, Rapp and Bachman on February 8, 2005. He alleged that Lt. Meader intimidated and threatened him and all of the Explorers that if they did not cooperate with the investigation or if they had contact with Officer Frontera, they would not get a job with the Columbus Police Division. According to Plaintiff, Sgt. Wilson investigated the complaint and, as part of that investigation, spoke with Sgts. Rapp and Bachman, who had interviewed Plaintiff. Plaintiff complains that this created a conflict of interest, and that the City's policy, custom or practice of indifference to conflict of interest issues within the Internal Affairs Bureau resulted in Plaintiff's citizen's complaint being inappropriately terminated. Again, it is altogether unclear to the Court what Plaintiff's Fourteenth Amendment claim is, or how the purportedly inappropriate handling of his citizen's complaint rises to the level of a constitutional tort.[12]

For these reasons, the Court finds that Plaintiff has failed to demonstrate that he suffered a constitutional violation. Defendants' Motion for Summary Judgment as to Plaintiff's claims under § 1983 is therefore **GRANTED**.

---

for Summary Judgment. The Court considers this claim abandoned. Even if Plaintiff had pursued the claim, the Court notes that Plaintiff has adduced no evidence of a relationship between his involvement in the investigation of Officer Frontera and the fact that he was not selected as for a police officer position. The decision-maker, Gramlich, did not learn of Plaintiff's involvement in the Internal Affairs investigation of Officer Frontera until some time in December 2004 or January 2005– some nine months after he made the determination not to process Plaintiff's application in March of 2004. (Gramlich Aff., ¶ 7.)

[12] Again, to the extent Plaintiff asserts that his citizen's complaint had anything to do with not being selected as a police officer, as he mentions in his original pleadings but not in his Memorandum, he has failed to adduce even a modicum of evidence that could causally connect the two incidents.

## B.  Policy, Practice or Custom - Municipal Liability

Even if he had established a constitutional violation, Plaintiff has failed to identify any official policy or custom of the City of Columbus that resulted in a constitutional violation. Here, Plaintiff asserts Defendants' informal policies, customs and practices that deprived him of his constitutional rights, include: (1) the "policy, custom or practices that allow inappropriate exercise of control by CPD over the Explorer Posts," and (2) the "policy, custom or practices that fail to train IAB investigators, especially with regard to the handling of citizen complaints and the constitutional rights of the private citizens." (Pl's Mem. Opp., at p. 6.)

Plaintiff correctly states that he is not required to identify a specific written policy. An act performed pursuant to a "custom" not formally approved by an appropriate decision maker, may subject a government entity to liability on the theory that the relevant practice is so widespread as to have the force of law. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). The fact that Plaintiff need not cite to an officially executed policy, however, does not relieve him from his obligation to adduce *specific facts* that the government had a widespread-informal policy that caused a constitutional violation.[13]

In this case, the Court finds that Plaintiff has not set forth specific facts to support a finding

---

[13]  Fed. R. Civ. P. 56(e) provides that, in responding to a motion for summary judgment:

[A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out *specific facts* showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

*Id.* (emphasis added).

that a City policy, custom or practice led to the alleged constitutional violations. He has merely provided conclusory allegations and opinions. First, the record does not support the supposition that the Columbus Police Division inappropriately exercises control over its own Explorer Posts. To the contrary, record evidence demonstrates that either the Boy Scouts or the sponsoring organization– in this case, the Columbus Police Division– may remove an adult volunteer at any time with or without cause. Lt. Meader testified that he had authority over the administrative operations of the Explorer Post by virtue of his position within the training bureau.

Second, as to his claim for failure to train, Plaintiff can establish liability "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Allegations that a particular officer was improperly trained are insufficient to prove liability. *Id.* Plaintiff has adduced absolutely no evidence that the City failed to train investigators within the Internal Affairs Unit with regard to processing citizen complaints. He likewise has pointed to nothing in the record that would demonstrate that the City was deliberately indifferent.

For these reasons, and those set forth above, Defendants' Motion for Summary Judgment is **GRANTED**.

### IV.

Defendants' Motion for Summary Judgment (Doc. #35) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendants.

**IT IS SO ORDERED.**

12-12-2008
**DATED**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

-15-